## BISHOP'S ESTATE.—ZINN and SNYDER'S APPEAL.

Sureties for an administrator may have a bill of review, where the administrator has charged himself in his account with rents and profits, and the proceeds of the realty.

And it is no objection that the accounts have been settled by auditors, and a distribution awarded, and actions brought by the creditors of the estate against the sureties.

FROM the Orphans' Court of Dauphin.

In February, 1849, the appellants presented their petition to the court below, setting forth that Keller became the administrator of Bishop in 1833, and that appellants were his sureties. In 1844 he filed his administration account, to which exceptions were taken, and a report of auditors made and confirmed; that from the account it appeared Keller had received and charged himself with the rents and profits of the intestate's real estate; that he had charged himself with one item of $4,513, as proceeds of the intestate's saw-mill, and with $657, being the proceeds of real estate sold by the sheriff; that the balance of the personal estate, including said items of real estate, appeared from the auditor's report to be $1,228, which had been ordered to be paid to creditors; that Keller was insolvent, and had removed from the state; and that suits were pending by the creditors against the appellants, as his sureties. A review was then prayed.

The creditors and others interested answered, that in the accounts Keller was allowed a credit, exceeding the amounts of the debits alleged to be erroneous; that those charges were rightly made by Keller; that auditors were appointed, who had reported balances from the personal estate $1,228, from the real estate $1,316, and that executions had been issued therefor, which had been returned *nulla bona*, and *devastavit;* that Keller had been dismissed, and auditors appointed to make distribution, whose report was confirmed in 1845; that a judgment had been obtained by a creditor against Keller, as administrator, and a *fi. fa.* issued and returned *devastavit*, upon which actions had been brought in 1845 against the appellants, as sureties, after notice, which suits were on the trial list; that these accounts and decrees were conclusive, and therefore a review should not be granted.

From the paper-book it would seem, that the allegations of the answer, respecting the various accounts and confirmed reports, were proved.

The court dismissed the petition.

2 R

*McCormick* and *Kunkle*, for the appellants.—There is no denial of the allegations that rents and profits, and proceeds of real estate, enter into the administration account. And it is clear, that for these amounts the sureties are in no respect answerable : 11 S. & R. 441 ; 8 W. 214. It is begging the question to say that the account has been settled by a decree. The law knows no distinction between judgments ; whether by default or on verdict, both are conclusive. It was for the purpose of correcting mistakes in decrees, that bills of review were authorized. They were introduced from the chancery practice ; and the form of the bill is proof, that the fact of a decree is immaterial, since it should aver that fact, and specify the error committed. Unless it is allowed these executors are remediless, the plaintiffs at-law need only show the fact of a balance decreed. This is conclusive by the act of 1832, and the point is settled in 7 Barr, 265.

*H. Alricks*, contrà.—The errors are not set out with sufficient certainty, 5 Barr, 95, nor are the appellants within the act of 1840. But the decree on the accounts, after an examination of the facts, which was made by the auditors, is conclusive, and cannot be re-examined : 17 Ves. 173 ; 2 W. 87 ; 7 Barr, 265 ; 6 Ib. 143. But if it could under other circumstances, the fact that they have allowed suits to be brought and costs incurred, without moving in the matter, ought to bar them.

*July* 7. COULTER, J.—The sureties in the administration-bond were answerable for the personal assets of the deceased alone. The condition of the bond to which the sureties consented, is, " that the administrator shall make a true and perfect inventory of the goods, chattels, and credits of the decedent, which shall come to his hands, or to the hands of any other person for him, and the same goods, chattels, and credits, and all the other goods, chattels, and credits of the said deceased, *at the time of his death*, or which at any time after shall come into his hands, or the hands of any person for him, shall well and truly administer," &c. From this it is apparent, that the rents, issues, and profits of the real estate, accruing after the death of the deceased, are not within the range or scope of the bond. They cannot be called goods and chattels of the deceased at the time of his death : and when it is attempted to make the sureties answerable for rents, issues, and profits of real estate, accruing after the death of decedent, for a series of years, it would seem that they may well answer, *non in hæc fœdera veni*.

Lands are assets for the payment of debts in Pennsylvania, but they are only so when the personal estate is insufficient for that purpose. In the mean time, and until the administrator or the creditor takes the proper steps to make the lands of the deceased available for that purpose, they descend to the heir, who is entitled to the rents and profits.

The administrator, however, in this case, it appears, or rather it is so alleged, received the rents, issues, and profits of the real estate of deceased, for a number of years and to a large amount, and introduced them into his account, as administrator. When he settled it in the Orphans' Court, a large balance was decreed against him. It is alleged in the petition that the administrator became insolvent, and has left the state, and that suits have been brought against the sureties in the bond, at the suggestion of creditors, to recover the amount decreed against the administrator. The petitioners, who are the sureties, present a petition, or bill of review of the account, within five years after the final decree.

The act of 1840 is plenary; and it is peremptory on the court to grant a bill of review, upon the application of an executor or administrator, alleging error in the account, *or any person interested*, supported and sustained by the oath of the applicant, at any time within five years after final confirmation of the account; *provided* the balance so decreed shall not have been *actually* paid by the executor or administrator. This is the only exception, and would seem to be the only matter upon which the discretion or judgment of the court can find excuse or justification in refusing to grant the review. It is not pretended to exist in this case. We are of opinion, that the reference of the account to auditors, and their proceedings upon it, offer no impediment to the bill of review, because they were part or parcel, and necessary adjuncts of the final decree, and introduce no new element which was not necessarily within the contemplation of the legislature. It does not amount to an *actual* payment. The proviso in the statute only conforms to the chancery doctrine on the subject.

I might stop here; but, without intending to forestall the future application of the law to the case, I may say that it is far from the intention of the court to infringe upon the salutary rule, that the decree of the Orphans' Court, upon matters within its jurisdiction, made upon hearing, or due notice to the parties interested, is final and conclusive, and cannot be overhauled, collateral or incidentally. It is rather to confirm than to weaken that rule, that full effect is given by this court to the act of 1840, authorizing a bill of review.

It is by no means certain that the petitioners would not be entitled to relief at law in the actions pending against them.· The mistakes alleged are apparent upon the face of the account, and certainly matters may be introduced into an account of an administrator, which would not conclusively bind those interested: Rittenhouse *v.* Levering, 6 W. & S. 201.

Nor is it intended to encroach upon the rule that the sureties are bound by a decree of the Orphans' Court upon the administration account of the goods and chattels and credits which were the decedent's at the time of his death, because the condition of the bond is, that the administrator shall well and truly administer those goods, chattels, and credits, and settle his account thereof in the Orphans' Court.

> The decree of the Orphans' Court, dismissing the petitions, is reversed, and a *procedendo* awarded.